# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DUCTCAP PRODUCTS INC.,**
        Plaintiff,

     v.                                     Case No. 10-CV-00110

**J&S FABRICATION INC., K&D SLIP COVERS,
ROBERT BUTCHELLO, and
JARED McCULLOUGH d/b/a KOVEREEZ,**
        Defendants.

## DECISION AND ORDER

Plaintiff Ductcap Products, Inc. brings this action for patent and trademark infringement. Defendants deny infringement and assert that the patent in question is invalid. Before me are the parties' cross motions for summary judgment.

### I. BACKGROUND

On April 5, 2005, the United States Patent and Trademark Office issued U.S. Patent No. 6,874,541 (the "'541 patent") to inventor Steve Vossen, who assigned the patent to plaintiff. The patent includes 11 claims, and plaintiff alleges that defendants infringed Claims 1, 4, 5, 6, 7, 10 and 11.

Claim 1 is for a temporary duct cover designed to cover the open end of a duct in order to prevent moisture and debris from entering the duct. The patent notes that the duct cover can be used to keep dust out of heat, ventilation and air-conditioning ducts ("HVAC ducts") left open during construction so that dust in the ventilation system will not cause health problems for people who later use a building. The duct cover has two parts: 1) the cover envelope, or body of the duct cover, which is a flexible sheet of material that covers

the open end of a duct and folds around the duct to cover part of the duct's exterior; and 2) a circle of elastic that is attached to the open end of the cover envelope. The duct cover is essentially a bag with a piece of elastic sewn around the open end. It slides over the end of the duct like a sock, and the elastic contracts around the duct to hold the cover in place. Below is Figure 1 from the '541 patent, which plaintiff used to show what the duct cover would look like on a duct, and Figure 2, which shows a duct cover before use.



The patent notes that the duct cover has a "substantially amorphous shape," which I interpreted to mean that the duct cover is "without definite form and can conform to ducts with different shapes." (Claim Construction Ruling, Feb. 24, 2012, 9–10, ECF No. 46.) During claim construction an issue arose concerning how long a duct cover had to be to be covered by the patent. Defendants argued that a shorter, "shower cap" style duct cover would not be covered, but I found that Claim 1 was broad enough to encompass a duct cover of any length as long as it covered some portion of the duct's exterior.

Claims 4 and 5 are dependent on Claim 1, which means they incorporate all of the language from Claim 1 and then add a limitation to it. *See* 35 U.S.C. § 112(d). Claim 4 discloses the duct cover from Claim 1, but adds the limitation that the cover envelope must

2

define an interior area larger than "the known sectional area defined by the duct exterior margin." I interpreted this as meaning that the cover envelope must be larger than the open end of the duct. This allows the duct cover to be opened up during installation so it can easily slide over a duct before the elastic is contracted around the duct's exterior. Claim 5 also discloses the duct cover from Claim 1, but adds the limitation that the cover envelope must be made of a poly plastic material—Claim 1 only requires that the cover envelope be made of a material that is "substantially impermeable relative to airborne particulate and moisture."

Claims 6 is for "[a] method of installing a duct cover." The steps in the claimed method are:

> "stretching a closed elastic member to define an interior area that is greater than the known sectional area defined by the duct exterior margin; forming a duct cover body of a unitary, integral flexible sheet of material having a substantially amorphous shape; sliding the duct cover over the duct opening and the duct exterior margin; and releasing the closed elastic member to contract into a conforming, sealing, compressive engagement with the duct exterior margin."

I interpreted the word "forming" in this claim as "constructing," meaning that the method in Claim 6 involves a manufacturing step where a person actually creates the duct cover before installing it. Since the claim does not require the elastic to be attached to the cover envelope, the manufacturing step could be as simple as folding a flat piece of plastic over the end of a duct before sliding a circle of elastic over it to hold it in place. Nonetheless, this means Claim 6 discloses a method for both constructing and installing a duct cover.

Claims 7, 10 and 11 are dependent on Claim 6. Claim 7 is for the method of Claim 6, but includes the additional step of "operably coupling" the elastic to the open end of the cover envelope before installing the duct cover. Claim 10 is for the method of Claim 6, but

3

notes that the cover envelope should be constructed so that it is larger than the open end of the duct that is to be covered. This limitation mirrors the limitation added in Claim 4, so that Claim 10 is a method of constructing and installing the duct cover disclosed in Claim 4. Finally, Claim 11 is for the method of Claim 6 with the added limitation that the cover envelope should be constructed of a poly plastic material. This makes Claim 11 a method of constructing and installing the duct cover disclosed in Claim 5.

Plaintiff claims defendants have infringed all of these claims by manufacturing, selling and installing duct covers that defendants call "Smith Slips." A Smith Slip is a duct cover formed by attaching a circle of elastic to the outer edge of a round piece of plastic to form a bag shaped like a shower cap. It is installed in the same manner as plaintiff's duct covers. Below is a photograph of a Smith Slip before and after installation.

 

Defendant K&D Slip Covers is owned by James Kline and Richard Doyle, and it is in the business of selling Smith Slips. It purchases them from an importer in Nevada, who has them manufactured in China. Defendant J&S Fabrications, Inc. is another company owned by James Kline, which designs, fabricates and installs duct work. For the purposes of summary judgment, defendants concede that J&S Fabrications, Inc. has used and distributed Smith Slips. Defendant Jared McCullough, doing business as Kovereez, has

4

also distributed Smith Slips, and plaintiff claims defendant Robert Butchello was McCullough's business partner. Butchello objects to this assertion and presents evidence that he claims proves he was merely one of McCullough's employees.

## II. DISCUSSION

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the party who will not bear the burden of proof at trial seeks summary judgment on the ground that "there is an absence of evidence to support the non-moving party's case," then the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and may grant the motion only if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

Plaintiff seeks summary judgment on Count I of the complaint because it claims the record proves defendants have willfully infringed Claims 1, 4, 5, 6, 7, 10 and 11 of the '541 patent. Defendants seek summary judgment on the ground that the same claims are either invalid or have not been infringed. Defendants also argue that they are entitled to summary judgment on Count II of the complaint, the trademark infringement claim.

5

**A. Method Claims**

The undisputed facts show that defendants have not infringed any of the method claims in the '541 patent. Plaintiff accuses defendants of infringing Claims 6, 7, 10 and 11 by using the patented methods. *See* 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent."). To succeed on this claim, plaintiff must prove defendants performed all of the steps of the patented methods within the United States. *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("[A] process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country."); *see also Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454–55 (2007) ("The presumption that United States law governs domestically but does not rule the world applies with particular force in patent law."). It cannot do this because I found during claim construction that the patented methods all involve a manufacturing step, and the evidence shows that defendants have always had Smith Slips manufactured in China. Therefore, they have not performed all of the steps of the patented methods in this country and are entitled to summary judgment with respect to Claims 6, 7, 10 and 11.

**B. Apparatus Claims**

For the purposes of summary judgment, defendants concede that they have infringed the apparatus claims of the '541 patent, Claims 1, 4 and 5, by using and distributing Smith Slips. Nonetheless, they claim they are entitled to summary judgment because these claims were anticipated by prior art under 35 U.S.C. § 102(a).

Section 102(a) states that a claim is invalid if the claimed invention was "known or used in [the United States] before the invention thereof by the applicant for patent." An invention was known or in use if a single piece of prior art embodies all of the limitations set forth in the patent claim, *Trintec Indus., Inc. v. Top-U.S.A.Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002), and that prior art was disclosed to the public or in public use. *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998) ("[P]rior knowledge or use by others may invalidate a patent under Section 102(a) if the prior knowledge or use was accessible to the public."). "Section 102 embodies the concept of novelty—if a device or process has been previously invented (and disclosed to the public), then it is not new, and therefore the claimed invention is 'anticipated' by the prior invention." *Net MoneyIn, Inc. v. Verisign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008). A party challenging a patent under § 102(a) must prove the existence of prior art "by clear and convincing evidence." *See Microsoft Corp. v. i4i Ltd. P'ship.*, 131 S. Ct 2238, 2242 (2011); *see also* 35 U.S.C. § 282(a) ("A patent shall be presumed valid.").

First, I must determine when Vossen invented the duct covers claimed in the '541 patent. The date of invention for a patent is presumed to be the date on which the patent application was filed, unless the patentee can present evidence proving that the invention claimed therein was conceived on an earlier date. *See Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 266 F.3d 1358, 1361 (Fed. Cir. 2001); *see also Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 60–61 (1998) ("The primary meaning of the word 'invention' in the Patent Act unquestionably refers to the inventor's conception rather than to a physical embodiment of that idea."); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227–28 (Fed. Cir. 1994) ("Conception is the touchstone of inventorship, the completion of the mental part

7

of invention."). Conception is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Burroughs*, 40 F.3d at 1228 (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)). Because conception is a mental act, the patentee must offer more than the testimony of the inventor to prove it. There must be "corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention." *Id.*

I conclude that the date of invention for the '541 patent is May 17, 2002, the date on which Vossen filed his provisional patent application. Vossen testified that he conceived of his duct covers sometime in early 2000, but plaintiff has not offered sufficient evidence to corroborate Vossen's testimony. Plaintiff provides no documents that establish the claimed date of conception, no sketches, notes, etc., and Vossen admits he did not meet with a patent attorney until February 2002 and did not reduce his ideas to practice until May 2002. The only evidence in the record that could possibly corroborate his claim is the vague testimony of two of his former co-workers, who say Vossen told them about his duct cover idea sometime in May or June 2000. The first co-worker, Lee Harrier, testified only that Vossen said "he was going to see if he could make a cap of some kind." (Decl. Niall A. MacLeod, Ex. 3, Dep. Lee Harrier 23:4–22, ECF No. 64-3.) The second, Daniel Elkjer, testified that Vossen told him he was thinking about making duct covers of various sizes out of plastic that could be held in place using a piece of elastic, but admitted that Vossen did not say the elastic would be attached to the plastic or that the covers would have flexible shapes so the same cover could fit either a round or square duct. He was also not sure Vossen had said the cover would be made of plastic or if he had simply assumed that.

8

Since Vossen failed to mention key limitations of his invention to these co-workers, their testimony is insufficient to prove a contemporaneous disclosure that would enable one skilled in the art to make the invention. Thus, the date of invention is May 17, 2002.

Defendants present evidence which they claim proves duct covers identical to those claimed in the '541 patent were known and used in the United States before May 17, 2002. They offer declarations from Stig Rosengren, the owner of a French Company named Stiros, and William Stout, the president of an Ohio-based company named Eastern Sheet Metal ("ESM"), and business records from both companies to prove that in September 2001 Stiros sold ESM duct covers that embody all of the limitations of Claims 1, 4 and 5 of the '541 patent. According to this evidence, ESM is in the business of designing and fabricating HVAC ducts, and, in March 2000, Stout attended a trade show in Stockholm where he met Rosengren. At that trade show, Rosengren was selling prefabricated duct covers designed to keep HVAC ducts clean. Like Smith Slips, the Stiros duct covers were formed by taking a circular piece of plastic and attaching a circle of elastic to the outer edge to form a bag that resembles a shower cap. The duct covers came in a variety of sizes, each of which could fit either a round or square duct. For example, the smallest size was advertised as fitting either a round duct with a 7" diameter or a 4" x 4" square duct.

Stout requested a quote for the Stiros duct covers and Rosengren provided one in a letter dated April 4, 2000. The letter described the different sizes available and gave the price for each size. Stout decided not to order any covers at that time, but requested

9

updated pricing information on July 31, 2001 and placed an order on August 3, 2001. The order arrived in the U.S. in late September 2001, and ESM began using the duct covers to protect the ends of its ducts during shipment to construction sites. ESM has continued to order and use Stiros duct covers ever since, placing new orders every one to two years. The design of Stiros duct covers has been the same since 1997. Below is a photograph of



a sample Stiros duct cover that Stout provided in a deposition in a related case.

The first question under § 102(a) is whether the Stiros duct covers embody all of the limitations of Claims 1, 4, and 5. This is a question of fact, but it may be decided on summary judgment if the record reveals no genuine dispute of material fact. *See Smithkline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1342–43 (Fed. Cir. 2005); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001). Here, plaintiff has conceded that the Stiros duct covers embody all the limitations in Claims 1, 4 and 5. Not only does plaintiff argue that the identical Smith Slips infringe those claims, but defendant has presented evidence that in 2008 plaintiff sued another company, Design Polymerics, for patent infringement because it was importing and using Stiros duct covers. Plaintiff's concession is also supported by the record because the declarations of both Rosengren and Stout indicate that Stiros covers have a cover envelope made of a poly

10

plastic material attached to a circle of elastic that has a flexible shape designed to keep dust and moisture out of the open end of either a round or square duct. Thus, there is no real dispute that Stiros duct covers embody all of the limitations of Claims 1, 4 and 5.

The second question under § 102(a) is whether defendants have presented sufficient evidence to prove that Stiros duct covers were being used in the U.S. prior to May 17, 2002. As noted, defendants have offered declarations from both Rosengren and Stout and provided corroboration for their statements by offering copies of business records from both of their companies. Thus, the evidence in the record appears to be sufficient. *See Woodland Trust*, 148 F.3d at 1372–73 (noting that human memories can be manipulated easily where valuable patents are at stake and that commercial activity usually leaves a paper trail). Nonetheless, plaintiff claims summary judgment is inappropriate for two reasons.

First, plaintiff argues that Rosengren's declaration is inadmissible because it is hearsay. Plaintiff points out that Rosengren is beyond the subpoena power of this court because he is a resident of France, and so defendants may not be able to reduce his testimony to an admissible form for trial because they cannot compel him to testify. By making this argument, plaintiff has confused the rules for admissibility at trial with the rules for admissibility at the summary judgment stage. The Seventh Circuit had held that there is no cross-examination requirement for admission of a declaration at the summary judgment stage. S*ee Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 604–05 (7th Cir. 2000); *see also Celotex*, 477 U.S. at 324 ("Rule 56 does not require the non-moving party to depose her own witnesses."); *Banco de Espana v. Federal Reserve Bank of N.Y.*, 114 F.2d 438, 445 (2d Cir. 1940) (holding that it would needlessly complicate summary

11

judgment proceedings to require an affiant to make an explicit promise "to submit to a cross-examination which will not be required if the affidavit is acceptable"). All that is required is that a declaration be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the [declarant] is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). All of these requirements are met here. Additionally, there is no reason to believe Rosengren would actually be unavailable for trial given that he has already voluntarily executed a declaration and shared his company's business records. Thus, I find that his declaration is admissible for purposes of summary judgment.

Next, plaintiff argues that there are questions about Stout's credibility because, on August 14, 2006, Vossen claims he called Stout to try to sell ESM duct covers and during that conversation Stout did not mention that ESM was using Stiros duct covers. Apparently, Stout only mentioned that ESM was using shrink wrap to cover ducts. Vossen's testimony about Stout's statements would not be admissible to prove ESM was not using Stiros duct covers in 2006 because it is hearsay, *see* Fed. R. Evid. 801(c), but plaintiff claims it could be used as a prior inconsistent statement to impeach Stout, *see* Fed. R. Evid. 613. This is weak impeachment evidence because Vossen does not claim Stout denied using prefabricated duct covers, and Stout stated in his testimony that ESM continues to use shrink wrap on many jobs.[1] Thus, the alleged statement is not clearly inconsistent with Stout's proposed trial testimony. Regardless, even if plaintiff could impeach Stout, it has not offered any evidence that could impeach or contradict Rosengren. Thus, there is

---

[1] According to Stout, whoever is handling shipping decides whether to use shrink wrap, plastic and tape, boxes, or duct covers. It depends on the type of duct and what the customer is willing to pay for.

12

sufficient undisputed evidence in the record to prove Stiros duct covers were known and used in the U.S. before May 17, 2002. As a result, Claims 1, 4 and 5 of the patent are invalid because they were anticipated by prior art.

Because I find that Claims 1, 4, 5, 6, 7, 10 and 11 are either invalid under 35 U.S.C. § 102(a) or not infringed, I will not address defendants' alternative arguments that these claims are invalid under 35 U.S.C. § 102(b) and § 103.

## C. Trademark Infringement Claim

Defendants move for summary judgment on Claim II of the complaint because they claim plaintiff has failed to prove trademark infringement. The complaint alleges that defendants McCullough and Butchello violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by using the term "duct cap" on the Kovereez website. Plaintiff claims the use of the term "duct cap" by defendants infringed plaintiff's unregistered DUCTCAP trademark. Defendants concede that they used the term "duct cap," but argue that this fact alone does not prove they violated § 43(a).

To prove trademark infringement under § 43(a) of the Lanham Act, plaintiff must establish that: 1) it owns a protectible trademark, and 2) defendants' use of that mark was likely to cause confusion among consumers. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001). The general principles for determining whether an unregistered trademark qualifies for protection are the same as those for registering a mark under § 2 of the Lanham Act. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992). A mark which is merely descriptive of a product is not entitled to protection unless it has acquired a "secondary meaning." *Id.* "A descriptive mark acquires secondary meaning if the

13

product name comes 'to be uniquely associated with the original seller.'" *H-D Michigan, Inc. v. Top Quality Serv., Inc.*, 496 F.3d 755, 759–60 (7th Cir. 2007) (quoting *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 483 (7th Cir. 2007)).

I conclude, based on the record before me, that no reasonable factfinder could find that plaintiff owns a protectible trademark. The term "duct cap" is descriptive of the duct covers being sold by both of the parties, and plaintiff has failed to offer any proof that its DUCTCAP trademark has acquired a secondary meaning. Similarly, I conclude that there is no genuine dispute over the likelihood of consumer confusion. Courts apply the following factors to evaluate whether a likelihood of confusion exists: "(1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiffs." *Ty, Inc.*, 237 F.3d at 897. Although the products sold by the parties are similar and the term "duct cap" is almost identical to plaintiff's DUCTCAP trademark, plaintiff has not offered any evidence that indicates consumers associate the DUCTCAP trademark with plaintiff or that actual consumer confusion has occurred as a result of defendants' use of the term "duct cap." Plaintiff's only response to defendants' motion for summary judgment is that defendants admit using the term "duct cap" on their website. I agree with defendants that this fact alone does not prove they violated the Lanham Act.

Because I am ruling in defendants' favor on all claims, I find it unnecessary to resolve the dispute over whether defendant Butchello was a partner or merely an employee

14

in the Kovereez operation and whether his status as an employee would shield him from liability for patent or trademark infringement.

**THEREFORE, IT IS ORDERED** that defendants' motion to file a surreply in opposition to plaintiff's motion for summary judgment [DOCKET #90] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment [DOCKET #75] is **DENIED**, and defendants' motion for summary judgment [DOCKET #59] is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 15th day of February 2013.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge