# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DUCTCAP PRODUCTS INC.,**
        **Plaintiff,**

      v.                                                                        Case No. 10-CV-00110

**J&S FABRICATION INC., K&D SLIP COVERS,**
**ROBERT BUTCHELLO, and**
**JARED McCULLOUGH d/b/a KOVEREEZ,**
        **Defendants.**

## DECISION AND ORDER

Plaintiff Ductcap Products, Inc. brought this action for patent and trademark infringement. On February 15, 2013, I granted defendants' motion for summary judgment on all of plaintiff's claims and on defendants' counterclaim and entered final judgment the same day. Plaintiff moves for reconsideration under Fed. R. Civ. P. 59(e), and defendants move for attorney's fees under Fed. R. Civ. P. 54. This opinion assumes knowledge of the facts and legal analysis set out in my summary judgment order.

I may grant a motion for reconsideration under Rule 59(e) "'if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact.'" *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (2012) (quoting *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996)). A Rule 59(e) motion does not "'provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior

to judgment.'" *U.S. v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010) (quoting *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000)).

Plaintiff moves for reconsideration on three grounds. First, plaintiff contends that I committed an error when I found that the date of invention for its patent, U.S. Patent No. 6,874,541 (the "'541 patent"), was May 17, 2002. I needed to determine the date of invention because defendants claimed the patent was invalid under 35 U.S.C. § 102(a) (2006), which states that a patent is invalid if "the invention was known or used by others in [the United States] . . . before the invention thereof by the applicant for the patent."[1]

The date of invention under § 102(a) is presumed to be the date on which the patent application was filed, unless the patentee produces evidence that shows the invention was conceived on an earlier date and that the inventor exercised reasonable diligence in reducing his invention to practice. *Loral Fairchild Corp. v. Matsushita Elec.*, 266 F.3d 1358, 1361 (Fed. Cir. 2001); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). Conception is "'the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) (quoting *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)). And reasonable diligence in reducing an invention to practice is activity that connects the conception of an invention with its reduction to practice "'so that they are substantially one continuous act.'" *Mahurkar*, 79 F.3d at 1577 (quoting *Christie v. Seybold*, 55 F. 669, 76 (6th

---

[1] Throughout this opinion, I cite to the 2006 version of the United States Code and not the current version because the statute was amended on September 16, 2011 and the old version of the statute governs the patent at issue in this case.

2

Cir. 1893)); *see also Brown v. Barbacid*, 436 F.3d 1376, 1380 (Fed. Cir.2006) ("'[D]iligence . . . may be shown by a variety of activities . . . .").

Where a patentee attempts to prove conception and diligence through testimony from the inventor, it must also produce independent evidence that corroborates the inventor's testimony. *Burroughs*, 40 F.3d at 1228 ("Because it is a mental act, courts require corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention."); *Brown*, 436 F.3d at 1380 ("Precedent requires that an inventor's testimony concerning his diligence be corroborated."). This rule "addresses the concern that a party claiming inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent or to maintain an existing patent." *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000).

Steve Vossen, the inventor of the '541 patent, filed his provisional patent application on May 17, 2002, but testified at his deposition that he conceived of the duct covers claimed therein sometime in the spring or summer of 2000. He said that two of his former co-workers, Lee Harrier and Daniel Elkjer, could corroborate this date of conception because he had told them about his idea. Defendants deposed Harrier and Elkjer and submitted copies of their depositions to the court. In their summary judgment motion, they argued that Harrier and Elkjer's testimony did not corroborate Vossen's claimed date of conception, and that Vossen had not exercised reasonable diligence in reducing his invention to practice. Plaintiff did not respond to either of these arguments. Its brief in opposition to defendants' motion simply stated in a conclusory fashion that "Vossen conceived his invention before . . . September 2001." (Pl.'s Br. in Opp. to Defs.' Mot. for

3

Summ. J. 1, ECF No. 78; *see also* Pl.'s Add'l Statement of Proposed Facts ¶ 1, ECF No. 80 (asserting that Vossen conceived his invention before September 2001 without providing any citation to evidence in the record).) As a result, I found that plaintiff had failed to prove a date of conception prior to May 17, 2002.[2] Plaintiff now attempts to pad its earlier brief by arguing in its motion for reconsideration that Harrier and Elkjer's testimony was sufficient and that Vossen exercised reasonable diligence in reducing his invention to practice.

Since plaintiff could have made these arguments earlier but did not, they have been waived. Therefore, I will not reconsider my earlier ruling. Alternatively, I reject plaintiff's argument on the merits. Even if plaintiff has presented sufficient evidence to prove Vossen conceived of his invention in the summer of 2000, it has not presented enough evidence to prove Vossen exercised reasonable diligence in reducing his invention to practice. Vossen testified that he reduced his invention to practice in May 2002 and said that, between the summer of 2000 and May 2002, he thought about the design of his duct covers, did research to see if anyone was already selling a similar product, searched for a manufacturer for his product, and, in February 2002, met with a patent attorney. Assuming that these activities are sufficient to prove diligence, plaintiff has still failed to meet its burden of production because there is no independent evidence that corroborates

---

[2] In reviewing my decision, I see that it contains a typo that should be corrected. When ruling in favor of defendants, I noted that Vossen did not disclose all of the limitations of his invention to Elkjer. Specifically, I said that Vossen did not tell Elkjer "the elastic would be attached to the plastic or that the covers would have flexible shapes so the same cover could fit either a round or square duct." (Decision and Order, Feb. 15, 2013, at 8, ECF No. 92.) The decision should have said that Vossen did not tell Elkjer *how* the elastic would be attached. (*See* Dep. Daniel Elkjer 61:12–16, ECF No. 64-4.)

4

Vossen's testimony regarding his activities prior to February 2002. (*See* Dep. Steve Vossen 63:9–20, ECF No. 64-43 ("Q: You did not and you do not have any business records that would show what you were doing during that time? A: No.").) Therefore, the date of invention for the '541 patent remains May 17, 2002.

Second, plaintiff argues that I committed an error when I found that defendants had proven by clear and convincing evidence that the duct covers claimed in '541 patent were known and in use in the U.S. before May 17, 2002. Plaintiff concedes that the evidence shows that Eastern Sheet Metal ("ESM"), an Ohio-based company, ordered duct covers that embodied all of the limitations of Claims 1, 4 and 5 of the '541 patent from Stiros, a French company, in August 2001, and that Stiros shipped the requested covers from China to ESM's Cincinnati office on September 15, 2001. However, plaintiff maintains that there is no evidence in the record that shows when the covers were received because William Stout, ESM's president, only said that he received the covers but did not say on what date he received them. Thus, plaintiff contends that it is possible Stout received the covers after May 17, 2002. Plaintiff has clearly waived this argument because it did not raise it in either its summary judgment briefs or its brief in support of the motion for reconsideration. This argument was raised for the first time in plaintiff's reply brief in support of its motion for reconsideration. Therefore, I will not reconsider my earlier ruling. Alternatively, I reject plaintiff's argument on the merits. There is no reason to believe the duct covers from Stiros were held up in transit for over eight months.

Finally, plaintiff argues that there is new evidence that requires me to reverse my ruling on its trademark infringement claim under § 43(a) of the Lanham Act, 15 U.S.C.

5

§ 1125(a). I rejected the trademark infringement claim because plaintiff failed to offer any proof that its unregistered DUCTCAP trademark had acquired secondary meaning. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–69 (1992). Plaintiff now presents a Notice of Publication for its DUCTCAP trademark issued by the U.S. Patent & Trademark Office ("PTO") on September 18, 2012. It claims this notice is prima facie evidence that the trademark has acquired a secondary meaning. It also presents an affidavit from Vossen offering proof of secondary meaning. This affidavit was filed with the PTO on July 26, 2012, three weeks before plaintiff filed its brief in opposition to defendants' motion for summary judgment. Since the evidence offered by plaintiff was available long before I entered final judgment on February 15, 2013, it is not new evidence and does not provide a basis for altering or amending the judgment under Rule 59(e).

For the foregoing reasons, I will deny plaintiff's motion for reconsideration. I will, however, order the clerk to amend the judgment so that it is clear that defendants are entitled to judgment on their counterclaim, which seeks a declaratory judgment of non-infringement and/or invalidity.

As the prevailing party, defendants move for attorney's fees under 35 U.S.C. § 285, which allows a district court to award attorney's fees to the prevailing party in "exceptional" patent cases. When deciding whether to award fees under this statute, I must decide: 1) whether the prevailing party has proven by clear and convincing evidence that the case is exceptional, and 2) whether an award of attorney's fees is appropriate in light of the facts of the case. *Taurus IP, LLC v. DaimlerChrysler Corp.*, — F.3d —, 2013 WL 4034384, at *13 (Fed. Cir. Aug. 9, 2013). A case is exceptional if the non-prevailing party engaged in

6

inequitable conduct before the PTO, engaged in misconduct during the litigation or brought frivolous claims. *Id.* Sanctions may be imposed for a frivolous claim if (1) the litigation is objectively baseless, and (2) the litigation was brought in subjective bad faith. *Id.* A claim is objectively baseless if the non-prevailing party's allegations are "'such that no reasonable litigant could reasonably expect success on the merits.'" *Id.* (quoting *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008)). And a claim is brought in subjective bad faith if the "lack of objective foundation for the claim 'was either known or so obvious that it should have been known' by the party asserting the claim." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1309 (Fed. Cir. 2012) (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).

Defendants maintain that they are entitled to attorney's fees under § 285 because plaintiff's patent infringement claims were objectively baseless and brought in bad faith. I disagree. Defendants argue that plaintiff should have known its patent was invalid under 35 U.S.C. § 102(a) at the time it filed its complaint because it knew Stiros had sold duct covers embodying all of the limitations in Claims 1, 4 and 5 of the '541 patent to a U.S. company as early as September 2001. While it is true that plaintiff knew about the September 2001 sale, it also believed it could establish an invention date for the '541 patent that predated the sale and it presented evidence during discovery to support this theory of the case. Plaintiff then waived this argument by failing to discuss it in its summary judgment briefs, but that does not mean its infringement claim was objectively baseless under § 102(a).

7

Defendants also argue that plaintiff should have known that its patent was invalid under 35 U.S.C. § 102(b). This statute bars the patenting of an invention that was the subject of a commercial offer for sale more than one year prior to the filing of the patent application. *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 996 (Fed. Cir. 2007). In this case, the critical date under § 102(b) is May 17, 2001 (one year prior to the filing of Vossen's provisional patent application). Defendants argue that plaintiff knew its patent was invalid under § 102(b) at the time it filed its complaint because it knew that Stiros had sent ESM an email quoting the price for its duct caps on April 4, 2000. Defendants maintained in their motion for summary judgment that this email was a commercial offer for sale. In response, plaintiff argued that the April 4, 2000 email was not an offer for sale because it was missing key contract terms including a quantity and a delivery address.

Plaintiff's infringement claims were not objectively baseless under § 102(b). An offer triggers § 102(b)'s on-sale bar if it is "'sufficiently definite that another party could make a binding contract by simple acceptance.'" *Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc.*, — F.3d —, 2013 WL 4081872, at *3 (Fed. Cir. Aug. 14, 2013) (*Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1323 (Fed. Cir. 2002)). In determining definiteness, a court reviews the language of the offer in accordance with the principles of general contract law. *Id.* Plaintiff essentially argued that the April 4, 2000 email was a quote and not an offer for sale because ESM could not make a binding contract by simple acceptance. A quote is "a statement of price per unit of quantity" that is commonly understood as inviting an offer rather than making one. Restatement (Second) of Contracts § 26 cmt. c; *see also*

8

*Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001) (noting that the Restatement of Contracts is one source courts can look to when determining whether there was an offer for sale under § 102(b)). Since the email uses the word "quote" and is missing a quantity, I find that plaintiff's argument was not objectively baseless. This does not mean that plaintiff would necessarily prevail under this section. I only conclude that defendants are not entitled to sanctions.

Finally, defendants maintain that plaintiff should have known its patent was invalid because the invention claimed therein was obvious and anticipated by prior art. Defendants point out that, as part of his provisional patent application, Vossen admits he submitted a photo of a food bowl cover pulled over the open end of a duct to illustrate how his invention would work. Vossen had purchased the bowl cover from his local grocery store, and it had the same structure as the duct covers claimed in the '541 patent. It was a plastic bag with a circle of elastic attached to the open end. The bowl cover was designed to be pulled over the top of a bowl to keep food fresh. Vossen did not tell the PTO that the device shown in the photo was a food bowl cover. He waited until he was deposed for this case to reveal this fact. Vossen also did not identify food bowl covers as prior art that the patent examiner should consider. Based on this evidence, defendants argued in their summary judgment motion that the '541 patent was invalid under 35 U.S.C. § 102(f) because Vossen did not invent the subject matter that he sought to patent, and under 35 U.S.C. §§ 102(a), 102(b) and 103 because both food bowl covers and shower caps anticipated the claims in the '541 patent and made the invention claimed therein obvious.[3]

---

[3] Defendants also argued that Vossen conceded that the '541 patent does not cover round, shower-cap style duct covers like the ones defendants produce because he said

9

In response, plaintiff conceded that food bowl covers and shower caps are part of the relevant prior art, but argued that Vossen's duct covers were neither anticipated nor obvious because food bowl covers and shower caps do not come in sizes large enough to cover the open ends of all ducts. Plaintiff pointed out that ducts can be quite a bit larger than a human head or food bowl and that the patent claims duct covers designed to fit ducts of all sizes. Defendants do not address plaintiff's argument regarding the size of bowl covers and shower caps. They only argue that food bowl covers and shower caps are anticipatory because they can be used to cover some ducts, and they do not separately address the question of obviousness. Therefore, I find that defendants have not met their burden of proving that plaintiff's arguments regarding anticipation and obviousness were objectively baseless. Consequently, I will deny defendants' motion for attorney's fees under § 285.[4]

---

that the food bowl cover he used was not a duct cover and it has the same structure as defendants' duct covers. (Both the food bowl cover and defendants' duct covers are formed by taking a flat circle of plastic and sewing a circle of elastic around the outer edge to form a bag, much like a shower cap.) Defendants misconstrue Vossen's testimony. During his deposition, Vossen said that the food bowl cover was not a duct cover because it was not sturdy enough and did not come in sizes large enough to fit all ducts, but he maintained that the '541 patent claims duct covers with the same basic structure as the food bowl cover. Therefore, he did not disclaim round, shower-cap style duct covers.

[4] Defendants' brief suggests that they might also be entitled to attorney's fees because Vossen engaged in inequitable conduct by misrepresenting the content of the photo he submitted to the PTO and by failing to disclose food bowl covers as part of the prior art. "'Applicants for patents have a duty to prosecute patent applications in the Patent Office with candor, good faith, and honesty,'" and a breach of this duty constitutes inequitable conduct. *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1229 (Fed. Cir. 2007) (quoting *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007))*.* Defendants, however, did not raise inequitable conduct as a defense to plaintiff's claims. They chose instead to argue that the factual events underlying the inequitable conduct invalidate the '541 patent. Therefore, they do not seek an award of attorney's fees on the basis of inequitable conduct.

Defendants also move for attorney's fees under 15 U.S.C. § 1117(a), which allows a prevailing party to collect attorney's fees incurred as a result of a trademark infringement claim under the Lanham Act if the case is "exceptional." The definition of "exceptional" under this statute is similar to 35 U.S.C. § 285. An award of attorney's fees is appropriate if the losing party's claim was "objectively unreasonable—was a claim or defense that a rational litigant would pursue only because it would impose disproportionate costs on his opponent—in other words only because it was extortionate in character if not necessarily in provable intention." *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 965 (7th Cir. 2010). Defendants argue that attorney's fees are appropriate under § 1117(a) because plaintiff's trademark infringement claim was nothing more than an add-on to its patent infringement claims designed to drive up the cost of this litigation. They point out that plaintiff's brief in opposition to summary judgment demanded $550,000 in damages for trademark infringement but failed to offer any evidence that shows it owns a protected trademark. In response, plaintiff asks me to consider the affidavit that Vossen submitted to the PTO on July 26, 2012 and the PTO's subsequent Notice of Publication as evidence that it owns such a mark.

Defendants are not entitled to attorney's fees under the Lanham Act because it was not objectively unreasonable for plaintiff to claim that it owned the DUCTCAP trademark and that defendants had infringed it. Plaintiff has used this trademark on its duct covers and promotional materials since 2002, and defendants concede that it was used as a meta tag on defendants' Kovereez website. Plaintiff waived this claim by failing to provide support for it in its brief in opposition to defendants' motion for summary judgment, but that

11

does not mean it was objectively unreasonable for it to include the claim in its complaint. It just means that defendants are entitled to summary judgment on it.

**THEREFORE, IT IS ORDERED** that plaintiff's motion for reconsideration (Docket #96) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk shall amend the final judgment (Docket #93) to include the declaratory judgment in favor of defendants. The judgment shall state that "the case is dismissed and judgment is entered in favor of defendants on the counterclaim. Defendants have not infringed Claims 6, 7, 10 and 11 of U.S. Patent No. 6,874,541, and Claims 1, 4 and 5 of the patent are invalid."

**IT IS FURTHER ORDERED** that defendants' motion for attorney's fees (Docket #99) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 13th day of September, 2013.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge